CITIZENS STATE BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106122.  Promulgated April 14, 1942.

*Ellis D. Bever, Esq.*, for the petitioner.
*Felix Atwood, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency of $595.94 in the income tax of the petitioner for the calendar year 1938.  One of the adjustments which he made was to include in income $1,763.29 representing recoveries in 1938 on debts charged off in previous years.  The propriety of that adjustment is the only issue for decision.  The Commissioner explained in the notice of deficiency that the recoveries constituted taxable income in accordance with the provisions of article 23 (k)—1 (*b*) of Regulations 101.  That article contains the following provision:

\* \* \* Any amount subsequently received on account of a bad debt or on account of a part of such debt previously charged off and allowed as a deduction for income tax purposes, must be included in gross income for the taxable year in which received.

However, the Board has held that recoveries of debts previously charged off and allowed as deductions are income only if, and to the extent that, the deduction had effected an offset of taxable income so that any excess deductions are tax-free when recovered. *Central Loan & Investment Co.*, 39 B. T. A. 981; *National Bank of Commerce of Seattle*, 40 B. T. A. 72; affd., 115 Fed. (2d) 875; *State-Planters Bank & Trust Co.*, 45 B. T. A. 630.  See also *Philadelphia National Bank* v. *Rothensies*, 43 Fed. Supp. 923.  Cf. *Amsco-Wire Products Corporation*, 44 B. T. A. 717; *Kennedy Laundry Co.*, 46 B. T. A. 70.  Those cases disapprove of the regulation, and the argument of the Commissioner that the question of benefit at the time of charge-off is immaterial.  They point out that the recoveries would be of capital only and would not represent income except for the fact that they had offset income when previously deducted.  They also hold that the recoveries are tax-free until their amount would produce taxable income in the year of the charge-off.

Counsel for the petitioner, in stating his contention at the hearing, said that the recoveries in this case were not income since they had not resulted in any tax benefits at the time the original deductions were taken. He said also: "The facts have all been stipulated." Counsel for the respondent, in replying, did not challenge this latter statement and did not intimate in any way that there were any material facts in addition to those stipulated. He said the issues had been stated substantially correctly by counsel for the petitioner except that the respondent did not admit that the petitioner had received no benefit from the charge-offs. He recognized that the Board had theretofore decided a similar issue adversely to the respondent and he inquired whether, under the circumstances, a memorandum brief would be sufficient. He was told that it would be.

The stipulation of facts is hereby adopted as the findings of fact. The debts recovered in 1938 were a part of larger amounts charged off in the four years immediately preceding and in 1931. The following table shows for those five years the net loss sustained by the petitioner in each year, the amount of bad debts charged off and allowed as a deduction in each year, the total subsequent recoveries on those debts up to 1938, and the recoveries during 1938:

| Year | Net loss | Bad debts charged off and allowed as a deduction | Subsequent recoveries up to 1938 | Amount recovered in 1938 |
|---|---|---|---|---|
| 1931 | *$24,304.46 | $37,092.67 | $1,891.50 | $300.88 |
| 1934 | 68,404.12 | 65,276.45 | 5,731.97 | 513.12 |
| 1935 | 9,915.00 | 21,758.29 | 1,654.48 | 528.20 |
| 1936 | 582.43 | 5,536.07 | 290.00 | 152.20 |
| 1937 | 3,040.37 | 2,708.70 | none | 268.89 |
| Total | | | | 1,763.29 |

*The petitioner was entitled to a credit of $3,000 not included in this amount. Sec. 26 (b), Revenue Act of 1928.

The recoveries made in 1938 were reported by the petitioner as nontaxable income on its return for that year.

The petitioner relies upon the decisions of the Board above referred to and claims that it has made out a prima facie case under those decisions which entitles it to judgment. The respondent, instead of filing a memorandum brief, filed an original brief of 23 pages and then filed a reply brief. His briefs for the most part are devoted to an argument that the regulations state the correct rule and the Board has been in error. This contention is rejected for reasons already stated in the cases cited.

The respondent also contends in his brief that the petitioner has failed in its proof, first, because the net loss for 1931 could have been carried over to offset gross income for 1932 under section 117 of the Revenue Acts of 1928 and 1932, and, second, because no proof has been

offered to negative the possibility that the petitioner claimed losses or other deductions in each of the years for which the bad debt deductions were claimed and to negative the further possibility that subsequently there were recoveries on those losses and deductions which, if related back to those years, might wipe out the net losses for those years. These contentions were advanced for the first time in the respondent's brief. The petitioner contends in this connection that it was the intention of the parties to stipulate all of the material facts known to either party; the stipulation was prepared after counsel for the respondent had benefited from a full examination of the petitioner's records; the petitioner is not called upon to prove all of these negatives, particularly under the circumstances of this case; if it is called upon to prove the negatives, then, in fairness to it, it ought to have a further opportunity to do so, since the facts are that there was no benefit from a carry-over of the 1931 loss and there were no recoveries of other items which would support the respondent's contention.

The Board entered a memorandum opinion in this proceeding holding that the amount recovered in 1938 was all taxable income to the petitioner because of a failure of proof to show that the petitioner had not received tax benefits from the charge-offs in the prior years. The Board there said:

* * * If during the years 1935–37, petitioner recovered and did not report as income amounts charged off and deducted for expenses, taxes or other items, the deduction of the bad debts charged off in 1934 may have resulted in direct tax benefit, so that the recovery in 1938 would be taxable.

A decision for the respondent was entered pursuant to the memorandum opinion.

Counsel for the petitioner then filed a motion to vacate the decision and for reconsideration, and, in the alternative, for a rehearing to permit the submission of additional evidence and, in the further alternative, for a reference of the report of the division to the full Board. It is stated in the motion that additional evidence is available to show that the petitioner sustained a net loss for 1932 of $10,133.03 without deducting any part of the net loss for 1931 and that it did not recover or fail to report as income for any of the years 1931 to 1937, inclusive, any amounts previously deducted for expenses, taxes, or other items. After the Member who had originally heard and decided the case had denied the motion in all other respects, the Chairman of the Board granted the motion in so far as it asked that the report be reviewed by the full Board. The Board, after reviewing that report, rejected it.

The petitioner has made a prima facie case in so far as the amounts recovered in 1938 were of debts charged off in the years 1934 to 1937, inclusive. Where, as here, the respondent had never intimated in

any way prior to the filing of his brief that recoveries had been made on other items previously deducted and had determined the deficiency on another ground, the petitioner was under no duty to negative the possibilities now referred to by the respondent. The notice of deficiency shows that the petitioner voluntarily reported the recoveries on the bad debts made in 1938, and there is no suggestion in the stipulation, in the determination of the Commissioner, in the statements of counsel, or in the respondent's briefs, that recoveries were actually made of amounts previously deducted except in the case of the bad debts. Furthermore, it seems fair to assume in this case that the parties intended to stipulate and actually stipulated all of the facts bearing upon this question. The stipulation contains all of the facts required in the Board cases above cited. We may safely leave to another case the question of just how great a burden of proof the Commissioner could place upon the taxpayer. Suffice to say that here the taxpayer has sustained the burden that was fairly cast upon him. He had no reason to believe that his burden was any greater than that which he has sustained by the stipulation.

The net loss for 1931 could have been carried over and deducted from income of 1932 under section 117 (d) of the Revenue Act of 1932. The petitioner had the burden of proof to show whether or not and to what extent the net loss for 1931 offset income for 1932. The point should have been expressly covered in the stipulation. The stipulation makes no reference to it and, as a result, several alternatives are presented. Should it be held that the petitioner realized income of $300.88 in 1938 because it recovered that amount of the debts charged off in 1931 and there has been a failure of proof to show that the charge-off did not result in a tax benefit in 1932? The petitioner has run the risk of such a holding. Another alternative would be to give the petitioner an opportunity to prove the fact alleged in its motion for further hearing, that is, that there was a net loss of $10,133.03 for 1932 without deducting any part of the net loss for 1931. Or should judgment be given for the petitioner on the present record?

The respondent has never contended and does not now contend that the net loss for 1931 actually offset any taxable income for 1932. The deficiency was not determined on that ground. Counsel for the petitioner knew that such a thing did not happen and may have been led to omit any reference to the point in the stipulation by the fact that the Commissioner never raised the point until after the stipulation was filed and the briefs were in. Although evidence was also available to the petitioner, nevertheless, the best evidence of whether or not the 1931 net loss actually was allowed as a deduction to offset income for 1932 is in the possession of the respondent. It would be an unnecessary safeguard to reopen this proceeding for further evi-

dence on this point. If by any possibility the facts are contrary to the contention of the petitioner, the respondent may be counted upon to take proper steps to correct the record. In view of the special circumstances present in this case, we think the stipulation admits of the interpretation that the net loss for 1931 did not offset any taxable income for 1932. This should not be taken as a precedent in another case for omitting any relevant facts from a stipulation.

The respondent erred in including the $1,763.29 in the income of the petitioner for 1938.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, concurring: The petitioner, in my opinion, made out a *prima facie* case by proving a deduction in each of the earlier years without a tax benefit. Upon such a record, petitioner established that the subsequent recoveries in the tax year were not income and were not taxable according to the extant state of the law when the proceeding was heard. The failure of the respondent to go forward with evidence that a tax benefit had been derived which gave the recoveries the character of income necessarily results in a decision for the petitioner, and petitioner was not required to prove that in none of the intervening years was there in fact an absence of tax benefit.

---

HILL, dissenting: The majority opinion appears not to have been based alone on the stipulated facts, but in part on representations in petitioner's brief which are not covered by the stipulation. The discussion in the majority opinion intermingles the question of whether petitioner is entitled to a decision on the merits as the facts now stand with the question of whether it should have been granted a further hearing to enable it to adduce evidence of additional facts to meet its burden of proof. Such intermingling is so adroitly accomplished as to convert the sharp line of demarcation between the two questions into a zone of gradation from one into the other. The representations in petitioner's briefs above mentioned are first set forth in the opinion as "contentions" of petitioner and later therein are apparently used as the basis of "fair" inferences or assumptions of fact to be considered in connection with the stipulated facts in resolving the merits of the controversy.

The only basis for a determination herein lies in the stipulated facts, nothing more. Representations of alleged facts by parties or their counsel outside the scope of the stipulated facts have no place in the consideration of the questions before us. We are not here considering whether a further hearing should have been or should be granted peti-

tioner, but only the question of whether on the stipulated facts petitioner had a tax benefit which renders taxable the recoveries on bad debts previously charged off and deducted. On this issue the burden of proof is on petitioner, not just part way through the proceeding, but all the way. I think the burden has not been met. The extent of the burden is not dependent in any way upon the action of respondent. I can not subscribe the statement in the majority opinion that "We may safely leave to another case the question of just how great a burden of proof the Commissioner could place upon the taxpayer." The law, not the Commissioner, imposes the burden, without any degrees in the scale of its weight.

Petitioner had this burden regardless of the limited character of the ground of deficiency stated in the deficiency notice. *Jacob F. Brown*, 18 B. T. A. 859, 867. Recoveries on bad debts, other losses, taxes, interest, and expenses deducted in an income tax return are "assumed" to be includable in income for tax purposes until the contrary is shown. *Hurd Millwork Corporation*, 44 B. T. A. 786. Respondent at no time has the burden of proof respecting such taxability. I have not overlooked *Philadelphia National Bank* v. *Rothensies*, 43 Fed. Supp. 923 (U. S. Dist. Ct., E. Dist. Penn.) which appears not to accord with this view.

The majority opinion construes the statement of petitioner at the hearing that "The facts have all been stipulated" as meaning that the parties agreed that all facts material to the issue presented were included in the stipulation because this statement was not there challenged by respondent. I think such construction is unwarranted. The stipulation itself negatives such construction. It provides "that the following statement of facts be taken by the Board to be true, with the right reserved to both parties to introduce further testimony in addition thereto.   *   *   *"

The fact that neither party chose to introduce testimony as to additional facts means only that each party was content to submit the case on the facts stipulated. Petitioner evidently deemed that the facts stipulated established its contention "that the debts, when charged off in prior years, did not accomplish a reduction of tax." Respondent in his statement at the hearing challenged the sufficiency of the facts to establish such contention. Petitioner was, therefore, on notice that respondent was joining issue with it not only on the determinative issue presented by the petition, namely, whether a tax benefit resulted in the charge-off of bad debts, but also on the sufficiency of the facts stipulated to resolve the issue in petitioner's favor. Furthermore, no duty rested on respondent to advise petitioner at or in advance of the hearing in what particular he deemed the stipulated facts insufficient to establish petitioner's contention, or to suggest the materiality of facts additional to those stipulated. There is no reason to assume

that the parties were not dealing at arm's length in the preparation and execution of the stipulation. How then can it be claimed, as indicated in the majority opinion, that respondent's failure, except in his brief, to state the grounds of his contention that petitioner failed to prove no tax benefit from the bad debt charge-off, unfairly placed petitioner at a disadvantage? The brief is the vehicle in which the arguments are usually and properly carried.

Evidence to establish lack of tax benefit, if such was the case, does not appear to involve unusual difficulty and the information with respect thereto is peculiarly within the knowledge of petitioner. To enable respondent to acquire such information would require an audit of petitioner's books over the period of years extending from a time antedating the first year of charge-off through and perhaps beyond the taxable year.

Recoveries on bad debts are not the only recoveries on prior deducted items that might effect a tax benefit from the deduction of bad debts. If net losses in years of bad debt deductions are recouped by recoveries of other deducted items, such as taxes, interest, operating expenses, loss by theft and loss by worthlessness of securities, etc., or, if net losses are eliminated by adjustment of depreciation allowance, it is obvious that a tax advantage would result from the bad debt deduction as of the year of such charge-off. To present the facts, if any, negativing such tax advantage is the burden of petitioner. It can not meet the burden merely by showing that in the year of the bad debt charge-off it had a net loss and that the recoveries thereon are less than such net loss. It can not lay its burden down at that point and force the respondent at his peril to shoulder the load thenceforward, for the patent reason that by stopping at such point petitioner has omitted the disclosure of facts (peculiarly within its knowledge) necessary to determine whether it had a tax benefit.

I submit that the facts do not show that petitioner had no tax benefit from the bad debt charge-off. To show that was its burden, under the law, despite the padding sought to be placed under its packsaddle by such expressions in the majority opinion as "the burden that was fairly cast upon him", and "He had no reason to believe that his burden was any greater than that which he has sustained by the stipulation."

Based solely on the data in the stipulated facts, it appears affirmatively that petitioner had a tax benefit from deductions for bad debts in each of the years 1931, 1934, 1935, and 1936, the taxability of the recoveries on which is involved in this proceeding. In the year 1931 petitioner deducted $37,092.67 for bad debts with a resulting net loss of $24,304.46. Of this deduction $12,788.21 offset taxable income. In the years prior to the taxable year petitioner recovered $1,891.50

on such debts. In the taxable year petitioner recovered thereon $300.88. To the extent that such deduction offset income, petitioner had a tax benefit.

In the year 1934 petitioner deducted $65,276.45 for bad debts with a resulting net loss of $68,404.12. But for such bad debt deduction the net loss for that year would have been only $3,127.67. In the years prior to the taxable year petitioner recovered on such debts $5,731.97. Relating such recoveries back and crediting them to 1934, the net loss for that year would be reduced to $62,672.15 with the result that $2,604.30 of the bad debt deduction for that year offset income. In the taxable year there was a further recovery on such debts of $513.12. To the extent that taxable income of $2,604.30 was offset by the bad debt deduction petitioner had a tax benefit.

In the year 1935 petitioner deducted $21,758.29 for bad debts resulting in a net loss of $9,915. Of the bad debt deduction $11,843.29 offset taxable income and to that extent petitioner had a tax benefit. In the years prior to the taxable year petitioner recovered $1,654.48 on such bad debts. In the taxable year there was a recovery on such debts of $528.20.

In the year 1936 petitioner deducted $5,536.07 for bad debts, resulting in a net loss of $582.43. Of such deduction $4,953.64 offset income and to that extent petitioner had a tax benefit from such deduction. In the years prior to the taxable year petitioner recovered $290 on such debts. In the taxable year there was a recovery of $152.20 of such debts.

In the year 1937 petitioner deducted $2,708.70 for bad debts resulting in a net loss of $3,040.37. In that year the bad debt deduction served only to increase a net loss otherwise existing. The net loss before the bad debt deduction was $331.67. In the taxable year there was a recovery on such debts of $268.89. Hence, it does not appear from the data contained in the stipulated facts that petitioner had any tax benefit from bad debt deductions in the year 1937.

The grounds of my dissent are:

1. That it is not shown by the stipulated facts that petitioner had no tax benefit from the bad debt deductions, the recoveries on which are sought to be taxed by respondent.

2. That it is shown by the stipulated facts that petitioner received tax benefit from bad debt deductions in all but one of the years in which bad debt charge-offs are herein involved.

---

DISNEY, dissenting: The deduction for bad debts can be said to have no tax benefit only where there is no gross income against which to apply it. If there is gross income it seems mathematically inescapable that each class of deduction contributes proportionately to

any net loss and that one category of deductions, for instance bad debts, should not be arbitrarily singled out as causing the net loss, contrary to fact and logic. A rule of allocation would, moreover, be more easily administrable, as is evidenced by the questions raised by the opposite rule applied by the majority opinion. I dissent.